RECEIVED
SEP 3 0 2014
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| GLORIA A. BOYD | CIVIL ACTION NO. 12-3071 |
| VERSUS | JUDGE DRELL |
| CORRECTIONS CORP. OF AMERICA | MAGISTRATE JUDGE KIRK |

## RULING

Before the court is a motion for summary judgment filed by defendant Corrections Corporation of America ("CCA") seeking dismissal of all claims against it by plaintiff in the above-captioned civil rights suit.[1] The court has carefully reviewed the briefs in this matter and finds that the motion should be granted in full according to applicable law and jurisprudence. We address the evidence and arguments of the parties below.

I. BACKGROUND

**Relevant Facts**

Plaintiff, Gloria A. Boyd, brings the instant civil rights employment discrimination suit against her former employer, CCA, alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII").[2] Plaintiff was employed on two separate occasions by CCA for a total of nineteen

---

[1] R. 36.

[2] 42 U.S.C. § 2000e, et seq. Plaintiff's original complaint included claims under both Title VII, the Rehabilitation Act (29 U.S.C. § 794) and the Age Discrimination in Employment Act (29 U.S.C. §621). See, R. 1 at ¶ 2. Plaintiff has voluntarily dismissed all claims except those under Title VII since then, by way of plaintiff's Amended Complaint [R. 7] and a Joint Stipulation of Dismissal [R. 31].

(19) years, most recently as a correctional case manager at Winn Correctional Center ("WCC") in Winnfield, Louisiana.[3]

Plaintiff alleges that her employment was terminated on April 15, 2011 for reasons which are "not valid and pretextual."[4] Plaintiff recounts that, while on duty at WCC, she overheard an inmate report handguns in inmate possession on the compound to her immediate supervisor, Unit Manager Delmer Maxwell ("Maxwell").[5] Approximately six (6) weeks later, on Sunday, April 10, 2011, plaintiff discussed the issue with this same inmate, who told her that two WCC inmates were in possession of .22 caliber handguns on the compound.[6] During this discussion, the inmate informant told plaintiff the nicknames of two (2) inmates in possession of these handguns. The informant also shared information regarding how these handguns and other contraband, such as cellphones, were being smuggled into the prison and the name of the corrections officer who was assisting in the contraband smuggling operation.[7]

Plaintiff was off duty the following day and, upon returning to work on Tuesday, April 12, 2011, informed Maxwell of the information she received from the inmate informant, including the nicknames of the inmates in possession of the handguns and the identity of the correctional officer engaged in contraband smuggling.[8] Plaintiff asserts that, upon receiving this information, Maxwell had the two (2) inmates searched and found no handguns, but did not report any of the information to his immediate supervisor. Plaintiff asserts that, because

---

[3] Winn Correctional Center is a Louisiana-owned penological institution falling under the purview of Louisiana's Department of Public Safety and Corrections and which is privately managed by defendant CCA. www.doc.la.gov/pages/correctional-facilities/winn-correctional-center/
[4] R. 1 at ¶ VI.
[5] Plaintiff's memo. In opp. [R. 37] at p. 1.
[6] Id. at p. 4.
[7] Id. at p. 4.
[8] Id. at p. 4.

2

she was aware that Maxwell failed to report the information to his supervisor, she took the initiative to report the information to Maxwell's supervisor, Chief Lucas, herself.[9]

On Wednesday, April 13, 2011, plaintiff spoke to Chief Lucas and relayed the information she received from her informant, excluding the name of the inmate informant.[10] Plaintiff explained to Chief Lucas that she would only be comfortable revealing the name of her confidential informant to Warden Tim Wilkinson, who was the warden at WCC at that time.[11] Plaintiff asserts that she did give the informant's name to Warden Wilkinson, but her employment was terminated on April 15, 2011 and she was replaced by Isreal Mouton, a male case manager.[12] Plaintiff alleges that she was terminated for failing to report time-sensitive information in a manner consistent with her duties at WCC, but that her male supervisor, Maxwell, was not fired, though he engaged in nearly identical conduct.[13]

Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") and received a notice of right to sue on or about September 14, 2012.[14] Plaintiff filed the instant suit on December 12, 2012.[15]

**Applicable Standard**

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[16] A dispute of material fact is genuine if the evidence is such that a reasonable jury could return a

---

[9] Id. at p. 5.
[10] Id. at p. 5.
[11] Id. at p. 5.
[12] Id. at pp. 1, 5.
[13] R. 1 at ¶¶ VI, VII.
[14] Id. at ¶ IX.
[15] Id., generally.
[16] Fed. R. Civ. P. 56(a).

3

verdict for the nonmoving party.[17] We consider "all evidence in the light most favorable to the party resisting the motion."[18] It is important to note that the standard for a summary judgment is two-fold: (1) there is no genuine dispute as to any material fact, and (2) the movant is entitled to judgment as a matter of law.

II. ANALYSIS

Plaintiff's federal claims arise under Title VII, which prohibits employment discrimination based on race, color, religion, sex or national origin.[19] A plaintiff asserting a claim for discrimination under Title VII may support their claim with direct or circumstantial evidence of the alleged discrimination.[20]

Where, as here, plaintiff supports her claim with circumstantial evidence, the court applies the familiar burden-shifting analysis of McDonnell Douglas Corp. v. Green.[21] Under the McDonnell Douglas analysis, plaintiff must first establish a prima facie case of discrimination. Under the facts of this case, plaintiff's requisite prima facie showing consists of evidence that: (1) she belongs to a protected class; (2) she was qualified for the position in question; (3) she was discharged or endured some other adverse employment action; and (4) her employer treated other similarly situated employees outside of her protected class more favorably.[22]

---

[17] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[18] Seacor Holdings, Inc. v. Commonwealth Ins. Co., 635 F.3d 675, 680 (5th Cir. 2011) (internal quotations omitted).
[19] 42 U.S.C. § 2000e-2(a).
[20] McDonell Douglas v. Green, 411 U.S. 792 (1973).
[21] Id.
[22] Vicari v. Ysleta Indep. Sch. Dist., 546 F.Supp. 2d 387, 410 (5th Cir. 2008) citing Bryan v. McKinsey & Co., 375 F.3d 358, 360 (5th Cir. 2004). We note, as did defendant, that some Title VII cases employ a fourth prong which requires that the plaintiff merely demonstrate that she was replaced by someone outside the protected class. See, e.g., Frank v. Xerox Corp., 347 F.3d 130, 137 (5th Cir. 2003) citing Bauer v. Albermarle Corp., 169 F.3d 962, 966 (5th Cir. 1999). Plaintiff seems to argue, however, that this is a case of disparate treatment based on gender, which requires plaintiff to show that she was treated less favorably than a male comparator for nearly identical conduct,

Under the McDonnell Douglas framework, if plaintiff successfully demonstrates these four (4) elements, the burden shifts to the defendant employer to articulate some legitimate, non-discriminatory reason for the adverse employment action taken against plaintiff.[23] The employer's burden at this stage "is one of production, rather than persuasion."[24] Once the employer articulates such a legitimate, non-discriminatory reason, the burden again shifts to the plaintiff to rebut the employer's reason by offering evidence that the employer's stated reason is merely pretext for some impermissible discrimination or that, while the employer's stated reason was one motivating factor, impermissible discrimination was a additional contributing factor.[25] The ultimate burden of persuasion that the employer intentionally discriminated against the plaintiff remains, at all times, with plaintiff.[26]

Defendant's motion asserts that plaintiff is unable to establish a prima facie case of discrimination and seeks dismissal of all claims against it on that basis. Defendant classifies plaintiff's suit as a "work-rule violation case" and emphasizes that plaintiff must show that the employee to whom plaintiff compares herself with respect to the adverse employment action engaged in conduct that was "nearly identical" to her own for purposes of the fourth prong of her prima facie case. Defendant asserts that plaintiff's comparator, Maxwell, does not meet the standard and, therefore, plaintiff fails to establish this prong of her case.[27]

---

obviating the need for a discussion of plaintiff's replacement by Isreal Mouton. We note, however, that defendants dispute that plaintiff was replaced by Isreal Mouton. See R. 37 at p. 6, n. 2. For reasons expressed below, however, we find this disputed fact to be inconsequential to the disposition of this motion.
[23] McDonnell Douglas, 411 U.S. at 802.
[24] Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000) quoting St. Mary's Honor Ctr. V. Hicks, 509 U.S 502, 509 (1993).
[25] McDonnell Douglas, 411 U.S. at 804-05; Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003); Rachid v. Jack in the Box, Inc., 376 F.3d 305 (5th Cir. 2004).
[26] St. Mary's Honor Ctr., 509 U.S. at 518 quoting Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 at 253, 256.
[27] R. 37 at pp. 3-6.

Specifically, defendant asserts that Maxwell's conduct was not "nearly identical" to plaintiff's because, though Maxwell admits that he failed to follow up on the partial information he received from the informant, he did not possess all of the information that plaintiff possessed and, moreover, plaintiff's termination was based, not only on her failure to report what she knew timely, but also on her insubordination in refusing to divulge the identity of her inmate informant when asked by her superiors.[28] Defendant points out that Maxwell did not engage in insubordination.[29]

We agree that this constitutes a work rule violation case and, therefore, plaintiff's fourth prong may consist of proof that she either did not violate the work rule as alleged or that while she did violate the work rule, other similarly situated male employees under "nearly identical" circumstances were treated more favorably.[30] We also agree that plaintiff fails to show that her comparator, Maxwell, engaged in "nearly identical" conduct, for which he was disciplined less harshly.

The evidence before the court, viewed in the light most favorable to plaintiff, shows that Maxwell knew of the presence of handguns in inmate possession on WCC premises because of his conversation with the inmate informant approximately six (6) weeks prior to plaintiff's meeting with that informant.[31] The evidence further shows that Maxwell had the inmates identified by the informant searched and that the search was fruitless.[32] Maxwell's own testimony admits that, though he possessed information regarding the presence of

---

[28] Id.
[29] Id.
[30] Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1090 (5th Cir. 1995) citing Little v. Republic Ref. Co., 924 F.2d 93, 97 (5th Cir. 1991).
[31] R. 41 at pp. 4-5, citing Boyd deposition at p. 89.
[32] Id.

handguns on WCC property, he failed to report the information to his superiors after his search failed to turn up any contraband.[33]

Defendant asserts that plaintiff was repeatedly asked to provide the name of her inmate informant to Chief Lucas and Assistant Warden Nicole Walker, but plaintiff refused, insisting that she would only reveal the informant's identity to Warden Wilkinson.[34] Plaintiff does not dispute this allegation, but explains that she chose not to comply with orders to reveal the informant's identity to Chief Lucas and/or to Assistant Warden Walker out of fear for her own safety and that of the informant.[35]

Thus, the evidence demonstrates that the errors allegedly committed by Maxwell and plaintiff are not "nearly identical" such as would show disparate treatment based on gender in this case.[36] As argued by defendant, Maxwell was suspended for what appears to have been the failure to act on his own initiative to report information bearing on inmate and staff safety. On the other hand, plaintiff's termination appears to have been based not only on her delay in reporting this same information, but also on her refusal to obey direct orders from superiors to divulge the identity of her inmate informant.

Accordingly, we find that plaintiff fails to demonstrate the requisite prima facie case of gender discrimination in this case. Though we need not continue in our analysis, we do so out of an abundance of caution.

Were we to assume that plaintiff had successfully carried her prima facie burden sufficient to shift the burden to defendant, we would find that defendant has successfully

---

[33] Id. at p. 6, citing Maxwell deposition at pp. 14-15.
[34] R. 37 at p. 5.
[35] R. 41 at p. 5 citing Boyd deposition at p. 96, 101.
[36] Okoye v. Univ. of Tex. Houston Health Sci. Ctr., 245 F.3d 507, 514 (5th Cir. 2001); Williams v. Trader Publishing Co., 218 F.3d 481, 484 (5th Cir. 2000); Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1090 (5th Cir. 1995).

articulated a legitimate, non-discriminatory reason for plaintiff's termination. Specifically, defendant asserts – and plaintiff does not deny – that she was insubordinate in refusing requests from Chief Lucas and Assistant Warden Walker to reveal to them the identity of her inmate informant.

Assuming for these purposes that the burden again shifts to plaintiff to demonstrate evidence of pretext, we would find that plaintiff fails to carry such burden. Plaintiff makes several arguments regarding the prudence of revealing an inmate informant's identity and asserts that it was common practice for the identities of such informants to be withheld in order to protect their safety.[37] Taking as true plaintiff's assertions that informant identities are often withheld in order to protect the informant from other inmates, we do not find that orders by plaintiff's superiors contravening standard procedures or even common sense show pretext in this case. It is well settled that Title VII is not an insurance against all imprudent, offensive or otherwise bad acts in the workplace and does not create federal claims thereon.[38]

The decision to terminate plaintiff's employment was recommended by Assistant Warden Walker, a female, and Assistant Warden George Stephenson, a male, Managing Director Melody Turner, a female, and Warden Wilkinson, a male.[39] Thus, half of the four decision-makers who voted to terminate plaintiff's employment were female. We agree that this fact undercuts any indicia of pretext. Additionally, defendant asserts – and plaintiff does not dispute – that she was hired by Warden Wilkinson and that Warden Wilkinson participated in her termination, entitling defendant to the "same-actor inference" as articulated by the Fifth

---

[37] R. 41 at p. 4 citing Boyd deposition at p. 69.
[38] Faragher v. City of Boca Raton, 524 U.S. 775 (1998); Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75 (1998); EEOC v. Boh Bros. Const. Co., LLC, 731 F.3d 444 (5th Cir. 2013).
[39] R. 37 at p. 11.

Circuit in Brown v. CSC Logic, Inc.[40] The "same-actor inference" entitles a defendant employer who hired and terminated a plaintiff such as the instant plaintiff to an inference that her gender was not a factor in her termination, since she was a member of this protected class at the time she was hired by this same employer.

Although it is not clear that the "same-actor inference" would apply without reservation in this case because plaintiff's termination was voted on by at least four (4) people, only one (1) of whom is alleged to have hired her, we do agree that, taken as a whole, plaintiff presents no evidence tending to show that her termination was based on her gender or that the reasons offered for her termination in this case are merely pretext for some impermissible discrimination.

For these reasons, the court finds no remaining question or dispute of fact which, if resolved in plaintiff's favor at trial, would entitle plaintiff to judgment on her claims in this court. Accordingly, we find that summary judgment should be granted in defendant's favor and plaintiff's claims should be denied and dismissed. The court will issue a judgment in conformity with these findings.

Alexandria, Louisiana
September 29, 2014

DEE D. DRELL
UNITED STATES DISTRICT JUDGE

---

[40] 82 F.3d 651 (5th Cir. 1996).